THE CHARLES BAUMBACH COMPANY (LIMITED), Appellant, vs. MILLER, Respondent.

*November 24 — December 14, 1886.*

*Voluntary assignment: Fraudulent conveyance: Rights and remedies of assignee.*

Under ch. 170, Laws of 1882, an assignee for the benefit of creditors does not take title to property fraudulently conveyed by the as-

signor prior to the assignment. Such assignee cannot, therefore, maintain replevin for such property, nor, if he has surreptitiously obtained possession, can he hold such possession as against the grantee in a fraudulent conveyance. [Whether under ch. 349, Laws of 1883, the assignee takes title and right of possession as against a mortgage given within sixty days prior to the assignment, not determined.]

APPEAL from the Circuit Court for *Taylor* County.

Replevin. The case is thus stated by Mr. Justice CASSODAY:

" April 30, 1885, Henry Kurtz, the keeper of a drug-store at Medford, executed and delivered to one Hirsch a chattel mortgage of all the stock of medicine, drugs, patent medicine, store fixtures, and furniture, and all and everything in his store then belonging to him, or that he might thereafter purchase for the keeping up of said stock and said store, to secure the payment of two promissory notes of $500 each, therein described, and interest; which mortgage was filed with the town clerk, May 30, 1885.

" October 2, 1885, said Kurtz executed and delivered to the plaintiff, and filed with the town clerk on the same day, a chattel mortgage upon all the property in said drug-store belonging to him, subject to said Hirsch mortgage, to secure the payment of two promissory notes,— one for $450, dated August 19, 1885, and one for $771.71, dated October 2, 1885, and each with interest.

" October 8, 1885, Hirsch took possession of the property described in the mortgage, under the same, and so continued in possession until October 10, 1885, when in consideration of $1,047.37, to him in hand paid by the plaintiff, he sold, transferred, and set over unto the plaintiff all his right, title, and interest in and to his said chattel mortgage and the indebtedness thereby secured; and also all his right, title, and interest in the mortgaged property, and all his right to sell and dispose of the same under the chattel mortgage; and thereupon he delivered such possession to the

plaintiff, who then went into the actual possession under both chattel mortgages, and continued in such possession until it was dispossessed as hereinafter stated.

" October 12, 1885, Kurtz made a general assignment for the benefit of his creditors to the defendant, *Miller*, who thereupon, observing the store door open and the plaintiff's agent in possession thereof standing on the sidewalk in front of the store, walked in through the open door and then shut it and locked the plaintiff's said agent outside of the store, with his hat still in the building. Fearing that said assignment was for some reason irregular and insufficient, the said Kurtz made another general assignment for the benefit of his creditors to said *Miller*, October 17, 1885.

" October 19, 1885, the plaintiff commenced this action for the wrongful taking and detention of the property. October 22, 1885, the defendant having given the requisite undertaking, the property replevied was returned to the defendant, who retained the same. The defendant answered by way of denials, and justified the taking under said general assignments. At the close of the trial the jury returned a verdict to the effect that the defendant was the owner of the property described in the complaint and was entitled to the possession thereof; that the value of said property was $1,800; and the defendant's damages for the taking of said property from him were six cents. · From the judgment entered upon that verdict the plaintiff appeals."

For the appellant was a brief by *Cate, Jones & Sanborn*, and oral argument by *Mr. Jones*.

For the respondent the cause was submitted on briefs by *J. K. Parish*.

CASSODAY, J. It is said that the bill of exceptions does not include the charge of the court. Although bunglingly put together, still we think the certificate of the judge to the effect that the bill of exceptions contained "the fore-

going testimony, the *rulings* of the court thereon, and *upon all matters pertaining to said trial,*" did make it a part of the record.

The undisputed evidence shows that each mortgage was given for a *bona fide* indebtedness of the amount named; that Hirsch took possession under his mortgage, with the consent of Kurtz, before the rights of any of his other creditors intervened. These things being so, the learned trial judge charged the jury, in favor of the plaintiff, to the effect that it was then too late for any creditor of Kurtz to question the validity of the mortgage given him on the ground that after-acquired property was included, or to question Hirsch's title to the whole property under it upon that ground; and that the plaintiff stood in the same position as Hirsch in that respect. He further instructed the jury, in effect, that if, at the time that mortgage was executed, it was agreed or understood between Hirsch and Kurtz that the latter might and did remain in possession, sell the mortgaged property at his option without accounting to Hirsch for the proceeds, and was not called upon by Hirsch to do so, "then, in such case, the mortgage was for that reason void in law as to the other creditors of Kurtz," and the fact of subsequently taking possession, as stated, would not place Hirsch or the plaintiff in any better position in this respect; that "the law will not permit one creditor thus to collude with his debtor;" that the burden of proving such agreement or understanding was upon the defendant; that if the jury were convinced of the existence of such agreement or understanding, then they should find that mortgage void for that reason and that the plaintiff had no right to the property in question by reason of that mortgage and the possession taken under it. The same instructions, in this regard, were applied to the mortgage given to the plaintiff.

These instructions can only be justified on the theory that

by virtue of the assignment the defendant became the legal owner of the property, and thereupon became immediately entitled to the possession of the same. If such is the law, it must be by virtue of the recent acts of the legislature. Previous to those acts it had repeatedly been held by this court, in effect, that such assignee in a general voluntary assignment took no rights of action, as against prior grantees or mortgagees, which such assignor himself would not have had. *Hawks v. Pritzlaff*, 51 Wis. 160, and cases there cited. Assuming the existence of such agreement or understanding between the mortgagor and Hirsch, as stated, still that mortgage would only be void as against the other creditors of the mortgagor properly attacking the same in the forms prescribed by law. In other words, that mortgage was perfectly valid and binding as between the parties to it. This being so, there can be no question but what Hirsch rightfully went into the possession, and, he having transferred the same to the plaintiff, the latter had the right to hold such possession as against Kurtz or any one who merely represented him as mortgagor.

True, under a recent act of the legislature, the defendant, as the assignee of Kurtz, represented the rights and interests of his creditors as against all transfers and conveyances which would be held to be fraudulent or void as to such creditors, and had all the rights which such creditors would have had to bring and maintain an action to avoid such fraudulent conveyances and transfers. Ch. 170, Laws of 1882. But this court has recently held, in effect, that this statute did not give to such assignee any title or right of possession in property so fraudulently transferred by his assignor prior to the date of the assignment to him. *Kloeckner v. Bergstrom, ante*, p. 197. It was there also held, in effect, that such assignee could not maintain an action *at law* to recover the value of goods the title to which had passed from his assignor prior to the date of his assignment,

no matter how fraudulent the transfer may have been. The reason is obvious. The assignee can only attack such prior transfer or conveyance as the representative of the other creditors. But neither the legal title nor the right to the possession is thereby vested in such other creditors or such assignee. The rights of such other creditors in the property so fraudulently transferred prior to the assignment is equitable in its nature.

Under the statute cited, such assignee only succeeded to such rights as such creditors previously possessed. *Kloeckner v. Bergstrom, supra,* and cases there cited. But such creditors had no right of replevin or trover. As indicated in that case, their remedy was by an equitable action, or an action having the same effect, to avoid the fraudulent transfer or conveyance and subject the property thus disposed of, so far as might be necessary, to the payment of such debts. It is to such right of action that the assignee for the benefit of creditors succeeded, under the recent statute cited.

By ch. 349, Laws of 1883, it is provided, in effect, that the assignee in any such assignment shall possess all the powers thereunder necessary to institute any action or proceeding to set aside and avoid any levy, sale, mortgage, hypothecation, lien, or other security therein named, which was made or taken within sixty days prior to the making of such assignment. It is unnecessary here to determine the precise scope or extent of the assignee's rights of action under this provision, since the Hirsch mortgage was made more than five months prior to the assignment, and hence the remedy thereby given would not be available to the assignee under that provision. The defendant, as such assignee, having no title or right to the possession of the property as against the Hirsch mortage, could not have maintained an action of replevin against the plaintiff so far as he held under that mortgage. This being so, his taking

possession thereof surreptitiously, as he confessedly did, gave him no right to retain such possession as against the plaintiff holding under the Hirsch mortgage.

We reserve all question as to whether the defendant, as such assignee, took title and right to the possession as against the mortgage given to the plaintiff within sixty days prior to the assignment, since the cause was tried upon the wrong theory as to the Hirsch mortgage; owing to the fact, perhaps, that *Kloeckner v. Bergstrom, supra,* was not decided by this court until after the appeal from the judgment herein.

Since the charge was clearly erroneous respecting the defendant's title and right to the possession of the property as against the Hirsch mortgage, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

*By the Court.*— Ordered accordingly.