LUTHERAN TRIFOLDIGHED CONGREGATION OF NEENAH, Appellant, vs. ST. PAUL'S ENGLISH EVANGELICAL LUTHERAN CONGREGATION OF NEENAH, Respondent.

*November 17—December 8, 1914.*

*Remedies: Equity: Courts: Corporations: Meetings: Notice: Waiver: Religious societies: Factional division: Rights of majority: Sale of property.*

1. For violation of a remediable right the person injured has an absolute constitutional right to a remedy conformably to the laws; and a court may not deprive him of such right by denying an equitable remedy where that is the only one available or where such denial is practically a denial of justice.

2. A court may not supersede the legal and equitable rights of parties by judicial notions of what is best for them from a moral standpoint.

3. Statutory and other requirements for notice of meetings of the members of a corporation are for the benefit of such members and may be waived by their presence and acquiescence.

4. The constitution of a religious corporation provided, in effect, that in case of a division of the membership the majority should be considered the proper congregation and should keep the property. It also provided that meetings of the congregation should be called by the minister. After a division had occurred the

minister, who was of the minority faction, refused to call a meeting. *Held,* that those composing the majority faction were the only members of the congregation entitled to a voice in administering its affairs; that under the circumstances the requirement in the constitution as to notice was inoperative; that no one of the minority was entitled to notice; and that the majority had the right, upon reasonable notice, to meet and act or, if all were present, to act without previous notice.

5. A sale of the church property, therefore, which was in good faith authorized and afterwards ratified at meetings attended only by those of the majority faction, but of which meetings all of both factions had actual notice, was valid and binding upon the congregation.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Action to set aside a deed purporting to have been executed by the trustees of the plaintiff corporation, conveying its church property to the defendant. These are the facts, as found, which were held to require the judgment complained of: In 1912, plaintiff was composed of thirty-one members. It was and still is, indebted in the sum of about $600 with no means of paying the same other than by a sale of the property in question. A majority of such members favored such sale. There was a bitter factional division in the congregation over the pastor and other matters. November 4, 1912, at a meeting of members of the plaintiff at which only those of the majority faction attended, it was voted to sell the property for $600 and the trustees were authorized to execute the necessary deed. Regular notice of such meeting was not given by the clergyman as required by the organic law of the corporation, because he had refused to read a notice of a meeting desired by the majority faction; he claimed it was not regular; but all members, in fact, had actual notice of the meeting in time to have attended. January 4, 1913, a deed of the property was executed pursuant to the authority aforesaid. The deed was thereafter duly delivered to the defendant, the purchaser, and it took possession of, and has since retained the

property. ·August 16, 1913, a meeting of the members of plaintiff was held at which a majority attended, and by resolution, ratified the sale and condemned the commencement and prosecution of this action.   Notice of the meeting was not given as provided by the constitution of plaintiff, but all members of the congregation had actual notice thereof, in advance.   Such constitution contains this:

"In the event of a division of this congregation, which God in His mercy forbid, the majority shall be considered as the proper congregation, and shall keep the property of the congregation.   However, this shall apply only in so far as (provided that) the majority remain true to the Lutheran faith. In the event of the opposite, the minority in so far as (provided that) it remains true to the arrangements of this congregation, shall be considered the proper congregation and shall keep the property."

Both factions so remained true.   Defendant acted in good faith in making the purchase, and subsequently to taking possession of the property, expended $130 for necessary repairs thereon.   There was no conspiracy to do the act complained of.   There was such a factional difference among the corporate membership as to render its useful existence impossible.   The sale was advantageous to plaintiff and was the only method by which it could pay its debts.   The price obtained was not inadequate.   The opposition to the sale is represented by not to exceed ten per cent. of plaintiff.   It is for the best interests of all parties that the sale and conveyance of the property should be confirmed.   The evidence does not make a case entitling plaintiff to equitable relief.

Judgment was rendered confirming the deed to respondent and dismissing the action with costs.

For the appellant there was a brief by *David C. Pinkerton,* attorney, and *Charles and Henry Barber,* of counsel, and oral argument by *Mr. Pinkerton.*

For the respondent there were briefs signed by *Mayhew Mott,* and oral argument by *Mr. Mott.*   He cited, among

other cases, *Duessel v. Proch,* 78 Conn. 343, 62 Atl. 152, 3 L. R. A. n. s. 854; *Fuchs v. Meisel,* 102 Mich. 357, 60 N. W. 773, 32 L. R. A. 92; *Dressen v. Brameier,* 56 Iowa, 756, 9 N. W. 193; *Nance v. Busby,* 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801; *First P. Church v. Myers,* 5 Okla. 809, 50 Pac. 70, 38 L. R. A. 687.

MARSHALL, J.   The function of judicial remedies is to redress and prevent wrongs of sufficient dignity according to the written or unwritten law to be worthy of such interference.   There are many outside of that field left to be redressed by the condemnation of the wrongdoer's conscience or social condemnation or penalized in some other way within his environment.   The former are denominated remediable rights,—that is such as if violated the right to a remedy is created.   The right violated is one thing.   The right to a remedy for the wrong is another.   The latter is just as inviolable as the former unless use of the necessary instrumentality, the court, shall have been, in some way, forfeited, absolutely, or it falls within the field of judicial discretion to withhold such use.

A remediable right may be strictly legal and its violation a subject for legal relief, or for legal or equitable relief according to circumstances, or it may be strictly equitable and so a subject for equitable relief only.   In case of the two methods of relief being adaptable to the case, the legal relief is to be sought for, other than in exceptional cases where it will not furnish as adequate relief as justice in the judgment of the court, guided by well settled principles, requires as equitable relief will afford.   In such a situation the court has some discretion as to whether the equitable instrumentality shall be used or not, but the right to redress of some sort for the violated right is just as absolute as the primary right itself.   It is a natural possession and within the fundamental declaration: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his

person, property or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." Sec. 9, art. I, Const. Thus it is not within the competency of a trial court upon any notion of equity not involving forfeiture of the right, "conformably to the laws" to take it away as by denying the use of the equitable remedy where that is the only one available, or denying it where the circumstances are such as to practicably amount to a denial of justice. One so circumstanced, in invoking the use of a judicial remedy is not appealing to gracious interference, but demanding a right,—that the court reach out its arm and compel restitution of what belongs to him and from his adversary who has no right thereto.

Applying the foregoing to the facts of this case it would seem that, if the members of the appellant who, assuming to exercise the power of the corporation, sold, conveyed, and transferred possession of its place of worship to the respondent corporation, had no right to do so, a remediable wrong was committed, giving rise to the right to a judicial remedy to redress it. It is a mistake to suppose that in such a case anything more than the mere existence of the violated legal right is required to set a court of equity in motion. That court, like every other branch of the government, must face the constitutional guaranty of a certain remedy in the laws to redress every wrong "completely and without denial." It is a creature of the constitution and its most important function is to vitalize its guaranties. It is not within the competency of courts to exercise a sort of paternalistic conservation of the interests of parties according to their best interests, in its judgment, thus superseding the legal and equitable rights by the judicial notions of what is best for them from a moral standpoint. Error seems to have prevailed in both these respects as we read some phases of the opinion of the learned trial court. That was emphasized by the judgment.

8]     AUGUST TERM, 1914.     61

Lutheran T. Cong. v. St. Paul's Eng. E. L. Cong. 159 Wis. 56.

The decree did not go upon the ground that, under all
the circumstances, only legal relief should be afforded, and
then proceed to afford relief of that nature and take addi-
tional evidence if necessary.  Nor did it rest with a mere
dismissal for want of equity, leaving the plaintiff free to
seek equitable relief as would seem to have been the view of
the court when its opinion was written, if it were not for the
draft of findings accompanying it.  In the opinion it is said:
"I conclude that the only judgment which the court can ren-
der is to dismiss the complaint.  It is so ordered."  But
that was followed by suggestions for findings and conclusions
for relief, affirming the acts challenged as illegal, affirming
the conveyance to respondent corporation and its title to the
church property, and judgment was so rendered.

The learned trial court answered the claim of appellant
that the deed of the church property was void on its face for
want of a seal as the statute requires, by saying that, if so,
it is not a cloud on title and a court of equity will not inter-
fere in such a case, citing *S. L. Sheldon Co. v. Mayers,* 81
Wis. 627, 51 N. W. 1082, and *Meloy v. Dougherty,* 16 Wis.
269, overlooking the fact that this was not an action to re-
move a cloud on title, but one to have a deed and contract
declared void and to obtain restitution of the church prop-
erty.  Though appellant was out of possession, it was proper
to sue for equitable relief, since the facts were provable only
by evidence *aliunde* the record, and, further, if the paper
title of respondent corporation be not technically a cloud on
title, it was proper to declare for equitable relief.  *Gibson v.
Gibson,* 102 Wis. 501, 508, 78 N. W. 917; *Post v. Camp-
bell,* 110 Wis. 378, 383, 85 N. W. 1032; *Suring v. Rollman,*
145 Wis. 490, 498, 130 N. W. 485.  It was further over-
looked that the mere relief asked for had very little to do
with the case anyway.  The technicalities which at one time
stood in the way of relief of the proper kind on the facts be-
cause of the nature of that asked for, overlooking that there
is but one court and one form of action, with no obligation

to ask for any relief except that which the party deems himself entitled to, and no penalty for not asking for the particular relief appropriate to the case, precluding that being afforded, have ceased to be efficient interferences. What were the rights of the appellant on the facts of this case? That was the sole question the court had to deal with. Those rights were not within the competency of the court to take away or do anything with except to vindicate them.

As we read the opinion and the findings and understand concessions made upon the argument, the persons who executed the deed sought to be set aside were not authorized to do so in the manner required by the organic law of the corporation, unless the minority members were excluded from any voice in the matter under the provision of the constitution hereafter treated. The constitution provides that meetings of the corporation shall be called by the minister, which was not done in the instance in question. If the meeting at which the vote was taken to sell the church property was not legally called, the action then taken to sell and convey the church property was not legal and so not binding on the corporation. Such meeting was not legal, as seems to have been practically conceded by the court below and counsel, unless the constitutional requirement as to the manner of convening members of the corporation to deliberate and act upon its affairs was superseded under the circumstances by the following provision:

"In the event of a division of this congregation, which God in His mercy forbid, the majority shall be considered as the proper congregation, and shall keep the property of the congregation. However, this shall apply only in so far as (provided that) the majority remain true to the Lutheran faith. In the event of the opposite, the minority in so far as (provided that) it remains true to the arrangements of this congregation, shall be considered the proper congregation and shall keep the property."

That seems to cover any division of the membership of the

church as to a majority and minority faction, preserving. to the former, in all cases, ownership, control, and disposition of the church property,—practically the whole power of the corporation in respect to it, with the single condition of the members of such majority remaining true to the Lutheran faith. That, by necessary implication, must operate as a proviso to the requirement that meetings of members of the corporation shall be called in a particular way, where there is a majority faction true to the faith and, so, in actual possession of all the corporate power, and a minority faction composed in part of the minister and all those which under ordinary circumstances are required to convene the membership for business, which under the particular circumstances are without any power whatever. Otherwise there would be the anomalous situation of a corporation with membership possessing all the corporate power without any way of getting together to do business.

In that view it was immaterial how the majority members were called together so long as they were all present or subsequently ratified what was done by those who were present.

We do not overlook the contention of counsel that the members of appellant who participated in the proceedings to sell the church property did not constitute a majority faction. The findings of the trial court are to the contrary, and do not seem to be against the clear preponderance of the evidence.

It follows that the judgment must be affirmed, though many of the reasons for it assigned by the trial court are unsound as we have seen. Under the facts, to all intents and purposes, the members of the majority faction at the time of the occurrence in question were all members of the corporation. The division was of long standing. It had become fixed and there was such bitterness between the two interests that exclusion of the minority was the only means of peace. The constitution provided a remedy for the unfortunate situation. The particular provision evidently was incorporated to meet

just such a situation,—one which experience had shown was quite likely to occur, sooner or later.   When it did occur there was really left as members of the corporation only those who composed the majority prior to the division and as there was no minister, from the necessities of the case, and according to the law governing corporations generally in the absence of some efficient prohibition, they had a right to convene upon reasonable notice and act, or all being present to act without previous notice.   No one who was present could impeach what was done, because the requirement for notice is for the benefit of the members and presence waived it.   Statutory and other requirements for notice of meetings of stockholders may be waived by their presence and acquiescence.   2 Cook, Corp. (7th ed.) § 599; 1 Thompson, Corp. (2d ed.) §§ 824, 825.

No one who was not of the majority was entitled to notice, because, by force of the constitution of the corporation, he had ceased to be a member entitled to a voice in administering the affairs.

*By the Court.*—Judgment affirmed.